Next case this morning is United States v. Fairbanks 24-4047. Counsel for appellant, please make your appearance and proceed. Good morning, Your Honors. Counsel, may it please the court, Spencer Ice appearing for Mr. Fairbanks, who today asks you to reverse his conviction for securities fraud on count 2 against Ms. Bernadustin, because in this case the district court erred in not granting our motion for judgment of acquittal. In this case, the government was allowed to present its theory of liability of guilt based entirely on evidence that dealt with count 1 regarding a Ms. Holloway, and there was evidence that the government presented, and it was strong. What is your understanding of the government's theory of liability under the statute, the charging statute, and the indictment states facts that support sort of all the elements 1 through 3, the three modes of fraudulent conduct. What was your understanding of the government's theory of liability? At the closing argument, my understanding was that they were basing it on the third theory of liability, that the security here, or that Mr. Fairbanks's supply-line company was operated as a business, or that he engaged in a course of business which operated as a fraud upon the purchases of the contract. And how is that theory of liability different from subsection 1, to employ scheme? Because my understanding of liability theory number 1 would be a scheme requires more than just two contracts. It requires a course of action related to several victims. To establish a scheme, which they didn't have here, and I think the district court pointed that out in our arguments that are in the record here, but to establish a scheme requires more than just two instances of conduct. Two contracts that are separated in time here by over a year. So your position is that there were two schemes, or more than, or at least two schemes, that there wasn't one scheme with multiple victims? Just so that I understand the theory of the defense on the charge. Our theory of the defense is that with regard to Ms. Holloway, the government could have proved their case on any one of these. They had evidence sufficient to do liability theory number 1, number 2, or number 3. But to get in Ms. Dustin, they focused on that number, the third prong, which was that Mr. Fairbanks operated a course of business that operated as a fraud upon Ms. Dustin. Because they clearly didn't have one and two. They couldn't show a scheme to defraud Ms. Dustin. They couldn't show that there was any false statements or untrue statements made to Ms. Dustin. She wasn't a witness. Could the jury have found that there was a common scheme that involved the victim for count 1 and for count 2, and thereby the government satisfies number 3? Our position is that would have required not only a speculation, but that would have been a huge leap for the jury to find that. I understand, we understand that the court can view all the inferences and evidence in the light most favorable to the government, but here these weren't reasonable inferences. These were leaps for them to connect Ms. Dustin, who signed her contract in 2014, with all the fraud that was presented with Ms. Holloway, who signed her contract in 2015, required a huge leap. But weren't both supply line related? Yes, and we can see that both of the securities, the language in the contracts, were very similar, if not identical. There was a few edits that the Holloways made in 2015 when they signed their contract. The contract language in itself is not fraudulent. It's the performance of the contracts here that makes the two cases so disparate, and it was our real fear and why we filed the motion to sever, and I'm not going to hit hard on the motion to sever today, we filed that motion to sever because we believe that there was a huge problem with the way the theory the theory the government was going to present to the jury presented this risk that they would convict Mr. Fairbanks on the Holloway evidence and not on the Dustin evidence, because there was a dearth of evidence regarding Ms. Dustin and any fraud that she experienced there, she never complained about it, she actually said the opposite. Ms. Dustin, in fact, and I think the most important point to drive home today, is that she was specifically asked. She couldn't testify she had died. Unfortunately, we would have loved to have her as a specifically asked by the government's agent. If the $30,500 check, which is the means of interstate commerce that the government alleged was fraudulently used here, if that check had any connection to the 2014 contract that she signed, that check was written in December of 2015, 18 months after she signed this 2014 contract, and the basis for the 2014 contract was a 40,000 cash investment. The government had to prove here that there were some means of interstate commerce that was fraudulently used in connection with the 2014 contract. Wasn't supply line in the memo of the check? It was, it was, and our theory there is that that is the only thing the jury had to connect any fraud with with regard to Ms. Dustin, is they saw the supply line name in the memo on the check, and they said, well, Ms. Holloway had a supply line contract also, and she was here to testify in court, and she testified that her experience was terrible, that she was defrauded, and so it has to be that this contract from a year earlier, money was lost, so we'll find her guilty also. We'll find Mr. Fairbanks guilty of that count also, and we think that was the inappropriate part here. That's why... Mr. Rice, you've given me a lot of basis for questions, but let me hit one initial one first. If you say you aren't going to spend a lot of time on the motion to sever today, but if you lose on your motion to sever argument, what impact does it have on your sufficiency of the evidence argument? And the reason I say that is a lot of your argument is predicated on the notion that they included all of this evidence related to the Holloway transaction, and that that evidence was used in it to support the conviction relative to the Dustin transaction count, too. Well, if you lose on severance, why isn't all of that evidence fair game? I mean, why isn't all of that evidence in? I think that the way to respond there is the facts available to the district court at the time we filed our motion to sever, we warned her that this could happen. Was there enough in front of her to say it will happen, or that the prejudice is going to be so high? We thought there was, but it should have been clear, and I think if you look at the way the district court struggled with this decision, even weeks after the jury returned their verdict, it was still under advisement. The way the evidence came in was clear, that the government presented a theory of liability as to the Holloway contract, and then they were allowed to argue that, well, because the contractual language is the same, and because Miss Dustin lost money, you can also find Mr. Fairbanks guilty on the Dustin count also. The government said that this was one scheme to fraud, and that these were representative examples of that scheme. If they, and the district court said that it was very likely that even if they had severed this case, then the Holloway evidence would come in. So the point is what, I accept the notion that conceptually you could have all of this evidence, and say, well, you still have to be able to say that discreetly that there was sufficient evidence as it relates to count two. Okay, that I accept that premise, but all of this sort of joint scheme evidence, all of this testimony of Holloway, unless there was some objection to specific aspects of that, why wouldn't that evidence be fair game for determining the guilt of the defendant as it relates to the Dustin transaction? And to be more clear, all the evidence about scheme, all the evidence about supply line, why isn't all of that evidence, except for perhaps anything just uniquely related to Holloway, why isn't all of that evidence properly considered in determining whether count two was sufficient? We don't think it would have been properly considered. We believe that the year of time that passed, or the 18 months that passed between the two contracts, make two separate, two separate contracts. And there was nothing in the Dustin contract from 2015 to the Holloway contract, the Dustin contract in 2014, excuse me, to the Holloway contract in 2015 to connect the two. Well, your position, I think, is, as you said, is that you don't think there was a scheme at all. There was no scheme between the two contracts. Between the two contracts. Yes, and the government cites here to support their argument that we don't need to present all of the witnesses or all of the potential victims in a securities fraud scheme. They cite to cases that are very instructive and helpful. When you have what normally happens in securities fraud, you have multinational, multi-state schemes that are sent through the mail out to many victims, and you have many people responding, and those cases are allowed to go forward even if some of the victims don't respond. They're still added as counts because the scheme is clear. And I would, I don't think the government could, and I don't think this court could find a case where there's been a securities fraud scheme with just two securities contracts. So disparate in their performance here. The disparity. How were they disparate in their performance? I understand that one of the contracts, he basically refused to return their money and said he was, he'd spent the money as, you know, working on a brief or something. The other contract, he did actually pay some of that money to another business that he was connected with, and then that business ends up paying some of that money to a business that his wife was connected to. But neither of these two contracts ever paid out a penny as a return on the investment, right? Isn't that true and isn't that important? Identical contracts, which were completely, I mean, essentially had no effect. They just lost their money. It is true. The money was spent on both and not returned on either one. Isn't that significant? It is significant, but it would be just a breach of contract then. It wouldn't be securities fraud. With regard to the Dustin contract, she was specifically asked about that means of interstate commerce, the $30,500 check, and where it went to. She knew exactly where it went to. She intended it to go to a dear friend, and it was a small business. She said he was a dear friend. She said that she basically didn't apparently mind that she lost her money. Couldn't the jury choose to maybe not disbelieve her, but believe that she had been a victim of fraud and didn't quite understand what had happened here? Without any evidence... Why isn't that possible for the jury to make some inferences there? Our position would be that's not just an inference. Well, not an inference, but to basically disbelieve her. It's a leap past the facts. It's a leap over and saying, well, she said this, but we're gonna really believe Ms. Holloway. Well, the investigator said that Ms. Dustin didn't understand her financial affairs, and the indictment itself essentially paints a picture that what's at issue here is preying on vulnerable people. So why couldn't a jury believe that Ms. Dustin didn't know really what was going on? She liked Mr. Fairbank. Why wouldn't she believe? Why couldn't a jury believe the investigator was right? And that is evidence that's in the record. The investigator said she didn't understand what was going on. The investigator said she didn't think Ms. Dustin understood that the money was gone. The evidence at trial was that Ms. Dustin, although she had had a stroke, was fully competent and capable. The Adult Protective Services gentleman who went to her house several times concluded that she was not being abused or badly treated by Mr. Fairbanks, and that she, in fact, was of sound and competent mind. No, fully competent people are defrauded all the time by, you know, talented fraudsters. It happens all the time. And when there's evidence of it... The fact that she was competent doesn't mean that she wasn't fraudulent. Right, and but if there were any evidence that she specifically had been defrauded, that would be different. But we're dealing with the performance on the Holloway contract. Ms. Holloway testified about what happened before she even signed the contract. She was made assurances outside of the four corners of the contract, told that other rich people had given their money, and that reassured her. She was told she could ask for an accounting at any time. She was told that she could get the money back at any time she wanted. She was more discerning, it sounds like. Certainly asked more questions, she and her husband, than did Ms. Dustin. As far as we know, we don't know, but... And that's the problem. I mean it's the difference between two investors and two individuals. One who accepts what's told to her, and another who asks a lot of questions. And it's a shame that Ms. Dustin could not be there at trial, and that's one of the reasons we asked for the motion to sever, is we did not have the ability to put on a fence and didn't have an accuser to confront. I have five seconds. Did you challenge the joinder to begin with, under Rule 8? My time is up. Can I respond? Yes, please. We did not challenge the joinder. We challenged the severance. Things were chaotic after Ms. Dustin passed away. We challenged the severance right before trial, because the government dismissed two of the most, the largest counts of wire fraud that involved Ms. Dustin, right before the trial. We anticipated they were going to dismiss all of the Dustin counts, and they did not. They just dismissed two. That's why our motion came in the day before. It was a fluid, it was a fluid situation right before trial. Thank you, counsel. May it please the court, counsel. Tyler Murray, on behalf of the United States. In response to Judge Rochman's question earlier about whether this was a scheme or a course of practice, it was, it was both. The, the, the methods of proving securities fraud are like overlapping concentric circles, and some conduct that is covered by some is also covered by the other. So this was both a scheme and a course of conduct, and we argued both. And with respect to Judge Moritz's question about the disparate performance in the two contracts, even without the testimony from Ms. Holloway, the jury could reasonably conclude that Ms. Dustin, in count two, was, was a victim of securities fraud. Consider this. She entered into a supply line contract. Supply line itself, the evidence shows, had no operational status. It was not registered with the state. It had no business, no license to issue securities. So it was essentially a non-existent business. So Ms. Dustin was induced to invest in a non-existent business, she never received the promised return, and with respect to the use of the money, it is true that it went to a business with which Mr., excuse me, Fairbanks was associated, ERA Realty. But the jury could reasonably conclude that he took that money and used it for his own purposes, just like he did the Holloways, because he, he never repaid any of that money, even when they had the opportunity. The company called Sunnybrae, which was associated with Mr. Fairbanks and his wife. And then the jury also heard when Mr. Fairbanks was confronted about this, that he didn't say, yeah, it was a business deal that went bad, I really wish it would have worked out better, things were bad. He said, supply line's not, supply line's just an idea, and I never solicited any investments in supply line. You're kidding me? And then when he was confronted with the contracts, he told a different story. So on those facts, a reasonable jury could conclude that Mr. Fairbanks committed securities fraud. And so that the difference in the performance of the contracts is really not material. They were both part of the supply line scheme, the supply line course of business here, that was the subject of the indictment and the evidence at trial. Are you suggesting then, I guess what you're saying is that had the contract with Ms. Dustin been on the up-and-up, he'd have had no reason to to make these kinds of denials or kind of cover up his his activity later? I think that's correct, Your Honor, yes. Yeah, he could have just said this, okay, well, this particular contract was, yes, I did enter into this, but it was valid. Yeah, yeah, he could have said any of those things, but he just flat-out denied those things. And the jury saw and considered all that evidence. What evidence would the government have presented if the trials were severed? We've presented evidence from the both things. We would have presented evidence that of what Mr. Holloway said supply line was. We would have submitted evidence of his website, of his pamphlet that he gave, of his PowerPoint that he prepared about supply line. We would have put on evidence about the representations he made at seminars and other things. And that that came admittedly from Mrs. Holloway, but she was the witness of that. That evidence would have come in in both trials. Then we also would have put on evidence that Mr. Holloway never registered supply line as a real business, even though he touted himself as the CEO of that business. He put on evidence that he never was authorized to issue securities. We would have put on evidence that he used the money that he obtained by soliciting investments in supply line to basically he said it was to fund a bucket that was the idea was a collaboration among local businesses to help each other buy assets and they'd be collateralized and and important and we'd get a return on that. It would turn out that the jury would have seen that the evidence of that bucket was really truly Mr. Fairbanks's pocket and that he was able to use that money in the way that he wanted. It sounds like based on what you're saying that if there were if there were two trials the trial has to count two as to Ms. Dustin would have involved all the same proof you would have relied heavily on the Holloway proof except for proving the interstate commerce element. So I guess my my concern is that you didn't have any the government didn't have any specific Dustin related fraudulent conduct evidence. We didn't have, let me push back on that just just a little bit Judge Rossman, um we we didn't have evidence that of direct misrepresentations that were made to Miss Dustin part in part because she had passed away we didn't have her testimony although her hearsay statements came in in part in the trial. But what we did have is we had her contract we had the checks showing that that that money that she came came from supply line we had the evidence that the jury saw that when shortly after she had her stroke that Mr. Fairbanks opened a joint account with her funded it with her money and a little bit of his and then invested in supply line we would have still had the same evidence that supply line was not operational we would have Mr. Fairbanks a statement the supply line had no operational status we would have had his denials. So you didn't have any specific misrepresentation as to Dustin and so you you were reluctant you would be relying on the scheme evidence. Yes yes and the inference I think is a reasonable inference to make that by when she invested in the supply line contract that she would have heard similar ideas I mean the supply line contract itself it says capital capital creation and business development the bucket it would have been a reasonable inference for the jury to consider that she heard a similar pitch to the Holloway's based on that evidence. Is it in fact true that in your view that as the district court said even if there were separate trials you would have had the Holloway, Holloway would have testified right? Absolutely absolutely your honor and the district court had already made that decision earlier on as part of the motion in limiting practice I think that's in the supplemental record volume 1. With respect to our case law and that the idea that a scheme has to involve more than two people this court's decision Massey rejects that that concept and it says that a scheme refers to an overall design to defraud one or many so the principles of scheming and defrauding or courses of practice aren't limited to whether a bunch of people are defrauded or just one is defrauded and I think the fundamental problem with the argument of the sufficiency argument that the defendant is making here my friend is making here is that he's trying to import a reliance element into essentially what is a is a criminal charge a reliance element in a securities fraud charge or count is an important part of a private securities fraud action or a private fraud action but the law does not require nor is it an element to have individual reliance in a securities fraud criminal prosecution there's no requirement that each of the victims testify there's no requirement of any of that or the government is not required to prove individual reliance the focus is on the defendants conduct not on the victims reliance on that conduct and so for those reasons here we think the case we cited Massey and Kennedy and the others in our brief are very helpful in showing that this was a scheme and that the government the evidence was sufficient at trial for a reasonable jury to conclude that a scheme to defraud or a course of business that acted as its deception happened here and if unless the court has any additional questions we'd ask the court to affirm thank you thank you cases submitted Thank You counsel for your fine arguments